UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| RICHARD BRATT, COREY SNOW, HEIDI CINADER, ARIN BRATT, and ARIANA BRATT, <br><br>Plaintiffs, <br><br>v. <br><br>JENSEN BAIRD GARDNER & HENRY, P.A., LINDA MOULTON, LEE IVY, FRANK CHOWDRY, and BRENDAN RIELLY, <br><br>Defendant. | ) ) ) ) ) ) ) ) ) Docket No. 2:17-cv-463-NT ) ) ) ) ) ) ) ) |

**ORDER ON THE JENSEN BAIRD DEFENDANTS' MOTION TO DISMISS AND DEFENDANT LINDA MOULTON'S MOTION FOR JUDGMENT ON THE PLEADINGS**

This action represents the latest chapter in a dispute among Harold F. Snow's heirs and relatives[1] that has persisted since his passing on November 29, 2011. The Plaintiffs are the husband and children of Mr. Snow's daughter, Dr. Susan Snow. They allege that Defendant Linda Moulton, also Mr. Snow's daughter and the designated personal representative of his estate, absconded with a shoebox full of highly sensitive personal information stored on a set of compact discs and hard drives that Dr. Snow and her family had left with Mr. Snow for safekeeping (the "**Storage Media**"). They further allege that Ms. Moulton shared the data from the Storage

---

[1] This case involves a separate suit before the Maine Probate Court. To help the reader keep the relevant players in this complicated saga straight, I refer to Harold Snow as Mr. Snow and his daughter, Susan Snow, as Dr. Snow. I generally refer to the Plaintiffs here as Dr. Snow's family. Where I do refer to the "Plaintiffs" or the "Defendants," I am referencing the Plaintiffs and the Defendants in the case at bar.

Media with her attorneys, individual Defendants Lee Ivy, Frank Chowdry, and Brendan Rielly and Defendant law firm Jensen Baird Gardner & Henry (the "**Jensen Baird Defendants**"), and that the Defendants collectively used that data as leverage during probate of Harold Snow's estate. Based on this conduct, the Plaintiffs have brought a three-count Complaint against the Defendants asserting state-law claims for invasion of privacy (Count I), conversion (Count II), and intentional infliction of emotional distress (Count III). (ECF No. 1.) This matter comes before me on the Jensen Baird Defendants' motion to dismiss the Complaint for failure to state a claim under Federal Rule of Procedure 12(b)(6) ("**Jensen Baird Motion**"), (ECF No. 10), and Ms. Moulton's motion for judgment on the pleadings under Federal Rule of Procedure 12(c) ("**Moulton Motion**"). (ECF No. 16.) For the reasons that follow, I **DENY** both motions.

## FACTUAL BACKGROUND[2]

### I. The Storage Media

From 1996 until 2011, Dr. Susan Snow and her family collected personal and sensitive information on a set of hard drives, digital backup tapes, and compact discs. Compl. ¶¶ 1, 19. Dr. Snow and her family stored these materials in a shoebox at Mr.

---

[2] The facts below are drawn from the allegations in the Complaint, which I take as true for the purposes of deciding motions to dismiss and motions for judgment on the pleadings, and from official public records supplied by the parties of which the authenticity is not disputed. *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001) ("In ruling on a motion to dismiss, . . . [o]rdinarily, a court may not consider any documents that are outside of the complaint. . . . There is, however a narrow exception 'for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to the plaintiffs' claim; or for documents sufficiently referred to in the complaint'." (citing *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)); *see also Kando v. Rhode Island State Bd. of Elections*, 880 F.3d 53, 58 (1st Cir. 2018) (courts assessing a motion for judgment on the pleadings may take into account documents fairly incorporated in the pleadings and facts susceptible to judicial notice).

Snow's home, under his promise of security and confidentiality. Compl. ¶¶ 19, 54.

When Mr. Snow died on November 29, 2011, Dr. Snow's sister Linda Moulton was named personal representative of his estate. Compl. ¶ 20. Within hours of Mr. Snow's death, Ms. Moulton excluded Dr. Snow and her family from Mr. Snow's property and changed the locks on his home. Compl. ¶ 20. Alarmed, Dr. Snow and her family asked Ms. Moulton either to allow them onto the property to collect the Storage Media or to return the Storage Media to them. Compl. ¶¶ 21-22. Dr. Snow and her family made clear to Ms. Moulton that the Storage Media's contents were private and confidential, and Ms. Moulton acknowledged that the Storage Media belonged to Dr. Snow and her family and not to Mr. Snow's estate. Compl. ¶ 22.

When Ms. Moulton eventually allowed Dr. Snow and her family onto Mr. Snow's property, they discovered that the Storage Media were missing. Compl. ¶ 24. Ms. Moulton confirmed that she had removed the Storage Media to her own home, but said that she would return them shortly. Compl. ¶ 24. She later failed to follow through on this promise and instead claimed that the materials had gone missing or that Dr. Snow or her family had taken them back. Compl. ¶ 24.

## II. The Probate Action

On March 20, 2012, Ms. Moulton, acting in her capacity as personal representative of Mr. Snow's estate, filed a complaint against Dr. Snow to void for undue influence a conveyance that Mr. Snow had made to Dr. Snow before his death (the "**Probate Complaint**"). Moulton Ex. C (ECF No. 16-3). During the ensuing litigation, Ms. Moulton attempted to leverage the Storage Media's contents against Dr. Snow. Compl. ¶ 27. Contrary to her earlier claim that she had lost the materials,

Ms. Moulton reviewed the data on the Storage Media and gave it to her attorneys. Compl. ¶¶ 27-28. Attorneys Chowdry, Ivy, and Rielly then also accessed, reviewed, and created a copy of the Storage Media data. Compl. ¶¶ 27-28, 30-31.

### A. Discovery Dispute Regarding the Storage Media

On July 17, 2013, Dr. Snow's attorney submitted a letter to the Probate Court to "present a discovery dispute" on her behalf. Moulton Ex. D (ECF No. 16-4). The letter asserted that Ms. Moulton had "obtained private information belonging to [Dr. Snow] and nonparty members of [her] family through means outside the scope of discovery rules" that was "not discoverable"—*i.e.* the Storage Media. Moulton Ex. D. The letter demanded that Ms. Moulton "immediately return the information, destroy all copies and request the information through the normal discovery process." Moulton Ex. D. Attorney Reilly responded that Ms. Moulton "merely intend[ed] to keep a copy" of the data because Dr. Snow had misrepresented the contents of the Storage Media and because the Storage Media contained discoverable materials including a set of diaries that Dr. Snow had refused to produce. Moulton Ex. E (ECF No. 16-5).

The Probate Court held a conference of the parties, during which Attorney Reilly misrepresented that the Storage Media contained no information related to Dr. Snow's family beyond a few pictures or limited mentions in other documents. Compl. ¶ 36. After the conference, on July 25, 2013, the Probate Court issued an order resolving the discovery dispute, which provided in relevant part that Dr. Snow was to turn over her diaries and any similar discoverable materials to Ms. Moulton's attorney and that:

4

> [Ms. Moulton] shall return to [Dr.] Snow's attorney by noon on Monday, July 29, 2013, the original CDs and hard drive found by [Ms. Moulton] in her father's home that are the subject of [Dr.] Snow's discovery dispute conference request. [Ms. Moulton]'s attorney shall keep a copy of the original CDs in order to maintain a record of what was received. [Ms. Moulton] may compare the documents produced pursuant [to the Probate Court's order for Dr. Snow to produce her diaries] with those on the CDs to make sure they are identical. If they are identical, [Ms. Moulton]'s attorney shall keep the copies of the CDs confidential unless necessary to defend any claim or action brought by [Dr.] Snow and/or her family, representatives, agents or assigns or anyone acting on their behalf, against [Ms. Moulton] or [her] counsel.

Moulton Ex. F (ECF No. 16-6). Following the Probate Court's order, Ms. Moulton, through her attorneys at Jensen Baird, turned over most of the original Storage Media to Dr. Snow's counsel but failed to return one hard drive and one compact disc. Compl. ¶ 39.

### B. Settlement of the Probate Complaint

On July 30, 2013, Dr. Snow, who was then represented by attorneys from Bernstein Shur, appeared at Jensen Baird's law office for Dr. Snow's deposition. Instead of proceeding with the deposition, Dr. Snow's attorney and Attorneys Rielly and Ivy went on record before the court reporter and dictated the terms of a settlement of the Probate Complaint. In the weeks that followed, Attorney Rielly and counsel for Dr. Snow exchanged drafts of a formal settlement agreement but were unable to arrive at a satisfactory writing. On August 15, 2013, Ms. Moulton, again in her capacity as personal representative, filed a motion to enforce the settlement memorialized in the July 30, 2013 deposition transcript. Dr. Snow opposed the motion to enforce.

5

On October 28, 2013, the Probate Court issued an order that granted Ms. Moulton's motion to enforce the settlement and her petition for formal probate of Mr. Snow's will. The Probate Court held that the oral recitation of the proposed settlement was binding and found that, pursuant to the transcript, the parties' agreement included the following stipulation relevant to this action:

> Global releases will be exchanged by the parties for all claims relating to the estate and these releases are to include the law firms representing the parties. In addition, the releases are to include any and all claims relating to [Ms. Moulton]'s acquisition of the computer discs and hard drive belonging to [Dr.] Snow, and any claims by [Dr. Snow] that [Ms. Moulton] or her attorneys have accessed information contained on the discs and drive are waived. [Jensen Baird][3] will destroy all copies they may have retained of information on the computer discs and hard drive, and [Bernstein Shur] will preserve the original computer discs and hard drive in perpetuity.

Moulton Ex. G at 7 (ECF No. 16-7). Dr. Snow appealed the October 28th order to the Law Court, which affirmed the Probate Court's decision on August 14, 2014. Jensen Baird Ex. B (ECF No. 10-2).

### C. Dr. Snow's Motion for Relief from Judgment and her Family Members' Motion to Intervene

The Snow family's story did not end there. Instead, through a series of letters received by the Probate Court on September 11, 2014, Dr. Snow and three members of her family[4] asked the court to modify its order on the motion to enforce the settlement. Moulton Exs. L-O (ECF Nos. 16-12, 16-13, 16-4, 16-15). Dr. Snow followed these requests with a formal motion for relief from the judgment. Jensen Baird Ex.

---

[3] Ms. Moulton's attorneys.

[4] Plaintiffs Richard Bratt, Heidi Snow Cinader, and Ariana Susan Bratt.

6

D (ECF No. 10-4). In her motion, Dr. Snow, represented by her new attorney Thomas F. Hallett, argued that the judgment was void because, by allowing her former attorneys at Bernstein Shur to retain the original Storage Media in perpetuity, the judgment "bound [Dr. Snow's family members] to the terms of the agreement regarding their personal property without this court having *in personem* jurisdiction, in violation of due process." Jensen Baird Ex. D at 1. Dr. Snow purported to file her motion on her family's behalf as well as her own. Jensen Baird Ex. D at 1. Dr. Snow's family, also represented by Attorney Hallett, filed a separate motion to intervene for the limited purpose of seeking to void the judgment for lack of personal jurisdiction. *See* Jensen Baird Ex. F at 5 (ECF No. 10-6).

Through an order dated October 25, 2016 (the "**Reconsideration Order**"), the Probate Court upheld the judgment yet again. Jensen Baird Ex. F. The Probate Court began by noting that Dr. Snow had offered no authority to support the proposition that personal jurisdiction was necessary over all persons whose information is incidentally disclosed in discovery. Jensen Baird Ex. F at 4-5. The Probate Court further found that (1) "[n]o information regarding [Dr. Snow's family members] was publicly disseminated in the discovery process"; (2) "the holder of the information is not using it for profit, fraud, or to compromise a privacy right"; and (3) "the information is being held in confidence by [Dr. Snow's] former attorney." Jensen Baird Ex. F at 4-5. Construing the motion to intervene as a request for joinder of parties necessary for just adjudication under either Rule 19 or Rule 22 of the Maine Rules of Civil Procedure, the Probate Court held that it was unnecessary to join Dr.

7

Snow's family members in the action because "information regarding nonparties incidentally disclosed in discovery does not require that there be personal jurisdiction over such persons." Jensen Baird Ex. F at 5. On March 17, 2017, Dr. Snow appealed the denial of the motion for relief from judgment and on March 31, 2017, the Law Court rejected her appeal as untimely. Jensen Baird Ex. G (ECF No. 10-7).

Taken together, the Probate Court's order on the discovery dispute and the now-final settlement require the Defendants to return all original copies of the Storage Media and to destroy any copies thereof. Since the close of the probate action, Dr. Snow has asked the Defendants on multiple occasions to comply with these directives. Compl. ¶ 43. Her requests have been unavailing, and the Defendants continue to withhold original copies of one compact disc and one hard drive. Compl. ¶ 43.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to seek dismissal if that party believes that the pleading fails "to state a claim upon which relief can be granted." In assessing a motion to dismiss under Rule 12(b)(6), a court "assume[s] the truth of all well-pleaded facts in the complaint and draw[s] all reasonable inferences in the plaintiff's favor." *Román–Oliveras v. P.R. Elec. Power Auth.*, 655 F.3d 43, 45 (1st Cir. 2011) (quotations omitted). To overcome a motion to dismiss, a plaintiff must establish that their allegations raise a plausible basis for a fact finder to conclude that the defendant is legally responsible for the claims at issue. *Id.* at 49.

Parties may seek judgment on the pleadings under Federal Rule of Civil

Procedure 12(c) "after the pleadings are closed but early enough not to delay trial." Courts evaluate motions for judgment on the pleadings in the same manner as Rule 12(b)(6) motions to dismiss. *Diaz-Nieves v. United States*, 858 F.3d 678, 689 (1st Cir. 2017).

## DISCUSSION

The Jensen Baird Defendants move to dismiss the Complaint on the grounds that the Plaintiffs' claims are barred by the doctrine of *res judicata* based on decisions rendered in the probate action. Defendant Moulton joins the Jensen Baird Defendants' preclusion arguments and further argues that judgment on the pleadings is appropriate because (1) the Plaintiffs cannot establish the elements of an invasion of privacy claim; (2) the Plaintiffs' claims are time-barred under the Maine Probate Code; and (3) the Defendants cannot be found liable for taking actions that complied with the Probate Court's orders.

### I. Whether *Res Judicata* Requires Dismissal of Plaintiffs' Claims

"The doctrine of res judicata prevents the relitigation of matters already decided." *Portland Water Dist. v. Town of Standish*, 940 A.2d 1097, 1099 (Me. 2008).[5] The doctrine has two arms, claim preclusion and issue preclusion, both of which the Defendants assert here.

### A. Claim Preclusion

Claim preclusion prevents "the relitigation of claims if: (1) the same parties or

---

[5] I look to Maine law to supply the rules of decision for determining the preclusive effect of a Maine judgment. *Roy v. City of Augusta*, 712 F.2d 1517, 1520 (1st Cir. 1983).

9

their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been, litigated in the first action." *Fiduciary Tr. Co. v. Wheeler*, 132 A.3d 1178, 1181 (Me. 2016). The Defendants fail to establish the first and the third of these requirements.

As to the first requirement, the Defendants have not established that the same parties or their privies are involved in both actions. "Privity exists when two parties have a commonality of ownership, control, and interest in a proceeding." *Beal v. Allstate Ins. Co.*, 989 A.2d 733, 740 (Me. 2010). "A privity relationship generally involves a party so identified in interest with the other party that they represent one single legal right." *Flaherty v. Muther*, 17 A.3d 640, 651 (Me. 2011). Here, the Plaintiffs had no identity of interest with Dr. Snow that was relevant to the probate proceedings.[6] This is demonstrated by the Reconsideration Order, in which the Probate Court found that it was unnecessary to join the Plaintiffs as parties because the judgment in the probate action did not impact their rights in the Storage Media. Jensen Baird Ex. F at 5; *see also Flaherty*, 17 A.3d at 651 (finding no privity where "the court's judgment in the previous litigation, which we affirmed, did not treat the

---

[6]  In their opening brief, the Jensen Baird Defendants argued that the Plaintiffs were Dr. Snow's privies solely because they are her family members. Jensen Baird Mot. 9 n.4. That argument is soundly foreclosed under Maine law. *See, e.g.*, *Hossler v. Barry*, 403 A.2d 762, 770 (Me. 1979) ("No privity exists between parent and child, and a suit by the former cannot extinguish or prejudice any existing cause of action in the latter."); *Arsenault v. Carrier*, 390 A.2d 1048, 1051 (Me. 1978) ("Where the child and the mother had no concurrent relationship to the same right, as may exist between trustee and trust beneficiary or guardian and ward, or where the child did not succeed to some interest of the mother's, no privity existed which would preclude the child's subsequent suit."); *see also* 18A Charles A. Wright, et al., Federal Practice and Procedure, § 4459 (2d ed. 2002) ("[F]amily relationships do not establish privity without more.").

10

settlement agreement as binding on the [plaintiffs]"); *Tungate v. Gardner*, 797 A.2d 738, 741 (Me. 2002) (finding no privity where insured "had absolutely no direct interest tied to [insurer's] success" in action against third party).

Regarding the third requirement, the Defendants have not established that the Plaintiffs' claims "might have been litigated" in the Probate action. *Fiduciary Tr. Co.*, 132 A.3d at 1181. The Defendants do not address, and therefore concede for the purposes of this motion, the Plaintiffs' argument that the Probate Court lacked jurisdiction to hear the Plaintiffs' tort claims. Resp. to Jensen Baird Mot. 5 (ECF No. 12). For the foregoing reasons, I find that claim preclusion does not bar the Plaintiffs' suit.

### B. Issue Preclusion

"Issue preclusion, also known as collateral estoppel, 'prevents the relitigation of factual issues already decided if the identical issue was determined by a prior final judgment, and the party estopped had a fair opportunity and incentive to litigate the issue in a prior proceeding.'" *Fiduciary Tr. Co.*, 132 A.3d at 1181 (quoting *Portland Water Dist.*, 940 A.2d at 1100). "Whereas claim preclusion is focused on the claims set forth in the prior proceeding, collateral estoppel concerns factual issues, and applies even when the two proceedings offer different types of remedies." *Portland Water Dist.*, 940 A.2d at 1100. However, issue preclusion arises "only if the identical issue necessarily was determined by a prior final judgment." *Macomber v. Macquinn-Tweedie*, 834 A.2d 131, 139-40 (Me. 2003). "It is not sufficient that the issue might have been litigated, the party asserting collateral estoppel must show that the issue was 'actually litigated' in the prior proceeding." *Montgomery v. Spinglass*

11

*Management Group, LLC*, No. CV-09-089, 2010 WL 1558118 (Me. Super. Feb. 11, 2010) (quoting *Macomber*, 834 A.2d at 140).

As with their claim preclusion argument, the Defendants' issue preclusion argument cannot succeed because they have not established that the Plaintiffs are in privity with Dr. Snow. *In re Children of Bethmarie R.*, 189 A.2d 252, 259 (Me. 2018) ("[T]he party sought to be barred or estopped from litigating the claim or issue" must have been "a party or privy to a party in the earlier case.").

The Defendants' issue preclusion argument also fails because they have not met their burden to show that some issue fatal to the Plaintiffs' claims was actually litigated and decided by a final judgment in the probate action. The Defendants suggest that virtually every decision in the probate dispute addressed "issues dealing with the handling of the computer discs and hard drive" and has preclusive effect, Reply to Jensen Baird Mot. 3 (ECF No. 15), but this is incorrect. The Probate Court's decision on the Storage Media discovery dispute cannot serve as the basis for a preclusion argument because the Defendants have failed to establish that the decision was "essential to a valid and final judgment." *Colquhoun v. Webber*, 505 A.2d 794, 795 (Me. 1986) (marks omitted) (quoting Restatement (Second) of Judgments § 27 (1982)); *see also N. E. Ins. Co. v. Atkisson*, No. CIV.A. CV-04-772, 2005 WL 2715345, at *3 (Me. Super. July 11, 2005) ("Discovery proceedings are not a final determination for purposes of collateral estoppel."). As to the Probate Court's order on the motion to enforce the settlement and the Law Court's orders on Dr. Snow's appeals, those decisions addressed timeliness and the enforceability of the Probate

settlement—they did not touch on whether the Storage Media were appropriately obtained or retained by the Defendants.[7]

The only other decision to which the Defendants point is the Reconsideration Order. The Defendants claim that this order offers three possible hooks for their issue preclusion argument. Reply to Jensen Baird Mot. 3. Two of these findings—that "the holder[8] of the information is not using it for profit, fraud, or to compromise a privacy right" and that "the information is being held in confidence by [Dr. Snow's] former attorney"—relate to conduct by non-party Attorney Colby Wallace at Bernstein Shur and are therefore irrelevant to the Defendants' motion. This leaves the Probate Court's finding that "[n]o information regarding [Dr. Snow's family] was publicly disseminated in the discovery process." *See* Reply to Jensen Baird Mot. 3. As the Plaintiffs point out, even if this finding had preclusive effect on them, dismissal would not be warranted because none of the Plaintiffs' claims require public dissemination of information. Resp. to Jensen Baird Mot. (ECF No. 12). Furthermore, the Complaint alleges conduct by the Defendants that occurred after the discovery process was complete. Compl. ¶¶ 43, 44.

---

[7] Nor was a finding that the Defendants had acted appropriately implicit in the decisions on the settlement. Dr. Snow was free to settle any claims arising from the Defendants' handling of the Storage Media regardless of the merits of those claims. The Probate Court's and the Law Court's decisions to enforce the settlement therefore did not address whether any misconduct occurred.

[8] I understand the term "holder" in the Probate Court's order to refer only to Dr. Snow's former law firm, Bernstein Shur. At the time the Probate Court entered the Reconsideration Order, the Probate Court's prior order enforcing the Probate settlement had established that only Bernstein Shur was permitted to retain copies of the Storage Media. *See* Jensen Baird Ex. A at 7 (ECF No. 10-1). This reading is confirmed by the next sentence in the Reconsideration Order, which states that the information is being "held . . . by [Dr.] Snow's former attorney." Jensen Baird Ex. F at 5 (ECF No. 10-6).

Having found the Jensen Baird Defendants' preclusion arguments to be unsupported, I **DENY** their motion to dismiss.

## II. Whether the Plaintiffs State a Claim for Invasion of Privacy

The Law Court has explained that invasion of privacy is a complex of four torts which safeguard "an individual's right 'to be let alone.'" *Berthiaume's Estate v. Pratt*, 365 A.2d 792, 795 (Me. 1976).[9] The four kinds of privacy invasion are:

(1) intrusion upon the plaintiff's physical and mental solitude or seclusion;
(2) public disclosure of private facts;
(3) publicity which places the plaintiff in a false light in the public eye; [and]
(4) appropriation for the defendant's benefit or advantage of the plaintiff's name or likeness.

*Id.*

Ms. Moulton argues, and the Plaintiffs appear to concede, that the Plaintiffs' invasion of privacy claim rests on a theory of intrusion on solitude or seclusion. The Law Court has adopted the definition of that cause of action found in Restatement (Second) of Torts § 652B, namely that "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of privacy, if the intrusion would be highly offensive to a reasonable person." *Nelson v. Maine Times,* 373 A.2d 1221, 1223 (Me. 1977); *Lougee Conservancy v. CitiMortgage, Inc.*, 48 A.3d 774, 781 (Me. 2012). The Law Court has further stated that a complaint for invasion of privacy "should

---

[9] The parties do not dispute that Maine law applies to the Plaintiffs' claims.

minimally allege a physical intrusion upon premises occupied privately by a plaintiff for purposes of seclusion." *Nelson*, 373 A.2d at 1223.

Ms. Moulton asserts that the Plaintiffs have failed to allege that the Defendants physically intruded on premises occupied by the Plaintiffs for the purpose of seclusion. She begins from the proposition that the "premises" relevant to the Plaintiffs' claim was Mr. Snow's home. From that starting point, she argues that the Plaintiffs do not allege that they occupied those premises at all, and that they could not have a privacy interest in information left there because it was possessed and controlled by another person—Mr. Snow.

Ms. Moulton's arguments are foreclosed by *Lougee Conservancy v. CitiMortgage, Inc.*, 48 A.3d 774. The *Lougee* plaintiffs were a family trust and three of its beneficiaries. The trust held title to a large piece of property that included the individual plaintiffs' ancestral home, the "Homestead." None of the plaintiffs resided at the Homestead, but they used the property to store family heirlooms and other personal items. After a series of misunderstandings, defendant D&S, a security company hired by defendant CitiMortgage, broke into the Homestead, rifled through the plaintiffs' possessions, and changed the locks on the door. In the ensuing lawsuit, the defendants argued that the Lougees could not maintain a claim for invasion of privacy because they did not "occupy" the Homestead in a manner that would give rise to an expectation of privacy. *Id.* at 781. The Law Court disagreed, noting that "[a]n individual is not required to own or live on a premises to be considered its 'occupant' or to maintain an expectation of privacy within it." *Id.* at 782. The court

15

further explained that "the physical occupancy necessary to maintain a claim for invasion of privacy can be established by virtue of private, personal possessions rather than physical presence because the owner *maintains a personal privacy interest in the possessions even when not physically present.*" *Id.* (emphasis added). In support of this finding, the court relied on the Restatement's comment that an " 'investigation or examination into [an individual's] private concerns, as by opening his private and personal mail, searching his safe or his wallet, [or] examining his private bank account' constitutes an invasion of privacy." *Id.* (quoting Restatement (Second) of Torts § 625B cmt. b). Ms. Moulton fails to differentiate taking and accessing a box full of digital media stored in a trusted family member's home under promises of secrecy from opening mail, searching a safe or a wallet, or a examining a bank account.[10] I find that the Complaint sufficiently alleges the required intrusion into seclusion, and I will not dismiss the Plaintiffs' invasion of privacy claim on this ground.

---

[10] *Lougee* likewise resolves Ms. Moulton's argument that the Plaintiffs cannot each allege a right to privacy in the Storage Media. The three individual *Lougee* plaintiffs were family members who asserted a privacy interest in the contents of a home owned by their family trust. *Lougee*, 48 A.3d at 781-82.

The other cases on which Ms. Moulton relies are inapposite. In *MacKerron v. Madura*, the Law Court found no invasion of privacy where the defendant had visited a third party's home in an unsuccessful attempt to read a letter the plaintiff had written to the third party. 445 A.2d 680, 682 (Me. 1982). The court found that the third party's "home and the letter are within her potential sphere of privacy, not plaintiff's," but did not address whether an intrusion would have occurred if the defendant had successfully opened the letter. *Id.* In *Loe v. Town of Thomaston*, the Law Court held that the defendants' disclosure of confidential settlement terms was not an invasion of privacy because it did not constitute a physical invasion of premises occupied for purposes of seclusion. 600 A.2d 1090, 1093 (Me. 1991). *Loe*'s facts bear little resemblance to those here, where the Plaintiffs assert that the Defendants physically removed and accessed the Storage Media. *Velishka v. Concentra Managed Care, Inc.*, in which the Superior Court found that unauthorized access of medical records was not an invasion of privacy, decided the invasion of privacy issue in the alternative, with minimal discussion, and without the benefit of *Lougee* and does not affect my ruling here. No. CIV.A. CV-00-149, 2001 WL 1734208, at *2 (Me. Super. Apr. 6, 2001).

16

## III. Whether the Plaintiffs' Claims Are Time-Barred under the Maine Probate Code

Maine's Probate Code provides that "[a]ll claims against a decedent's estate which arise at or after the death of the decedent . . . are barred against the estate, the personal representative, and the heirs and devisees of the decedent, unless," with irrelevant exception, they are brought within the later of four months after the claim arises or nine months after the decedent's death. 18-A M.R.S. § 3-803(b), (a)(2). "If a personal representative is personally at fault in respect to a tort claim arising after the decedent's death, his personal liability [is not] affected by the running of the special short [limitations] period provided [by § 3-803(b)]." *Id.* § 3-803 cmt; *see also id.* § 3-808(b) (a personal representative can be held "individually liable . . . for torts committed in the course of administration of the estate only if he is personally at fault").

Ms. Moulton asserts that the Complaint is based solely on conduct that she undertook in accordance with her role as the personal representative of Mr. Snow's estate and for which she cannot be considered "personally at fault." Moulton Mot. 8-9. Therefore, Ms. Moulton argues, the Plaintiffs' claims are "claims against the estate" under § 3-803(b) and, because the Plaintiffs filed their Complaint more than four months after the claims arose and more than nine months after Mr. Snow's death, their claims are time-barred. The Plaintiffs respond that § 3-803's limitations period does not apply in this action, either because Ms. Moulton is personally at fault for the alleged torts or because § 3-803 applies only to actions "against the estate." Resp. to Moulton Mot. 6 (ECF No. 19).

17

The Complaint alleges sufficient facts to suggest that Mr. Moulton was personally at fault for the alleged torts. Whatever latitude the Probate Code gives personal representatives to inventory estate property is irrelevant here, where the Complaint alleges that Ms. Moulton acknowledged from the outset that the Storage Media were not part of Mr. Snow's estate. Compl. ¶ 22.

In light of the foregoing, I find for the purposes of this motion for judgment on the pleadings that the Plaintiffs' claims are not time-barred.

## IV. Whether the Probate Court's Orders Foreclose the Plaintiffs' Claims

As her final argument, Ms. Moulton posits that she cannot be held liable under any theory the Plaintiffs advance because her conduct conformed to the Probate Court's orders. Ms. Moulton correctly notes that the record before me includes (1) a court order that expressly permitted the Defendants to retain a copy of the Storage Media data and (2) an order by a Maine court that I read to state as a matter of law that the incidental disclosure of materials in discovery does not impair privacy rights. I do not doubt that both points will be relevant to this action at some stage. However, Ms. Moulton presents these observations without reference to any authority or principle of law—assuming, perhaps, that her position is self-evident. It is not, and I will not speculate upon which legal peg she intends to hang her hat. *Nkihtaqmikon v. Bureau of Indian Affairs*, 672 F. Supp. 2d 154, 159 (D. Me. 2009) ("It is not the Court's role to act as a party's advocate and to supply the [defendant] the defense it

consciously failed to supply for itself.").[11] Accordingly, I will not grant judgment on the pleadings on this basis. Ms. Moulton's motion is **DENIED**.

## CONCLUSION

For the reasons stated above, the Court **DENIES** the Jensen Baird Defendants' motion to dismiss and **DENIES** Defendant Moulton's motion for judgment on the pleadings.

SO ORDERED.

/s/ Nancy Torresen
United States Chief District Judge

Dated this 24th day of September, 2018.

---

[11] Moreover, at this procedural juncture the orders Ms. Moulton references would be unlikely to require the outright dismissal of the Plaintiffs' claims. Despite the Defendants' persistent assumptions to the contrary, the record before me does not indicate that the Probate Court at any point offered absolution to the Defendants for Ms. Moulton's initial, allegedly unlawful seizure of the Storage Media, Compl. ¶ 50, the Defendants' alleged dissemination of the Storage Media data to "others," Compl. ¶ 45, or the Defendants' alleged ongoing refusal to relinquish or destroy outstanding Storage Media in violation of the Probate Court's orders. Compl. ¶ 40, 43-44. At most, the record suggests that the Probate Court permitted the Defendants to retain copies of the Storage Media in confidence and for use in discovery up until the settlement agreement came into effect. *See* Jensen Baird Ex. C (ECF No. 10-3); Jensen Baird Ex. A at 7.