UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| RICHARD BRATT, et al., | ) | |
| | ) | |
| Plaintiffs | ) | |
| v. | ) | No. 2:17-cv-00463-NT |
| | ) | |
| JENSEN, BAIRD, GARDNER | ) | |
| & HENRY, P.A., et al., | ) | |
| | ) | |
| Defendants | ) | |

## *MEMORANDUM DECISION AND ORDER ON DISCOVERY DISPUTE*

The defendants seek discovery from a nonparty attorney witness, J. Colby Wallace, Esq., of Bernstein Shur Sawyer & Nelson ("Bernstein Shur"), concerning his and Bernstein Shur's communications with their former client, nonparty Dr. Susan Snow, on the basis that Dr. Snow waived any attorney-client privilege respecting those communications. *See* Request for Discovery Dispute Hearing Pursuant to Local Rule 26(b) ("Hearing Request") (ECF No. 46) at 1. For the reasons that follow, I agree that Dr. Snow both implicitly and expressly waived the privilege with regard to her communications with Attorney Wallace and Bernstein Shur relevant to the instant action.[1]

### I. Applicable Legal Standards

Rule 26(b) of the Federal Rules of Civil Procedure outlines the general scope of permissible discovery in a civil action.

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering

---

[1] This issue was the first of three that the defendants raised in their hearing request, filed on August 9, 2019. *See* Hearing Request. I held a telephonic discovery hearing with counsel on August 21, 2019, during which Bernstein Shur raised a fourth issue. *See* ECF No. 53. I ruled on the second issue, deemed the third and fourth issues moot, and reserved ruling on the instant issue. *See id.*

the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

"[A] party resisting discovery has the burden of showing some sufficient reason why discovery should not be allowed[.]" *Flag Fables, Inc. v. Jean Ann's Country Flags & Crafts, Inc.*, 730 F. Supp. 1165, 1186 D. Mass. 1989) (citation and internal quotation marks omitted). In addition, the proponent of a privilege bears the burden of demonstrating entitlement to its protection. *See, e.g., In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 22 (1st Cir. 2003) ("Despite a grand jury's vaunted right to every man's evidence, it must, nevertheless, respect a valid claim of privilege. But the party who invokes the privilege bears the burden of establishing that it applies to the communications at issue and that it has not been waived.") (citations omitted).

## II. Factual Background

This action arises out of the alleged removal of a box of digital media containing the plaintiffs' highly sensitive personal information by a relative of the plaintiffs serving as the personal representative of the estate of Harold F. Snow, the family member in whose home the box was stored. *See* Complaint and Jury Trial Demand ("Complaint") (ECF No. 1) ¶¶ 1-2, 19-20. The plaintiffs, Dr. Snow's husband and children, allege that the defendants – Linda Moulton, who is Dr. Snow's sister, and the law firm and attorneys who represented Ms. Moulton in her role as personal representative of their father's estate – collectively used the plaintiffs' private and confidential data retrieved from Mr. Snow's home as leverage during the probate of his estate and have wrongfully refused to return all original copies of the storage media containing that data and

2

destroy any copies thereof. *See id.* ¶¶ 33-41; Deposition of Susan R. Snow ("Snow Dep.") (ECF No. 46-1), attached to Hearing Request, at 24-25, 33-34.[2]

Dr. Snow was deposed in connection with this case on April 19, 2019. *See* Snow Dep. at 1. She testified at length concerning the substance of her communications with Attorney Wallace, who represented her in the underlying probate matter, including their strategy discussions and disagreements, *see, e.g., id.* at 46-53, and, most significantly for these purposes, statements purportedly made to Attorney Wallace by defendant Brendan Rielly, Esq., who was representing Ms. Moulton in the probate matter, as well as Attorney Wallace's own observations regarding Attorney Rielly, *see, e.g., id.* at 55, 63-64, 91, 94-96, 101-02, 126, 129-31, 135-36, 138, 142.[3]

On or about June 10, 2019, defendant Moulton served a subpoena to produce documents and to testify on Attorney Wallace and Bernstein Shur, *see* ECF No. 46-2, attached to Hearing Request, to which Glenn Israel, Esq., of Bernstein Shur responded by letter dated June 25, 2019, stating, in relevant part, that Bernstein Shur would "produce attorney/client privileged communications only after receipt of express written permission from Ms. Snow to do so[,]" ECF No. 46-3, attached to Hearing Request. On or about June 26, 2019, defendant Moulton served an amended subpoena to produce documents and to testify on Attorney Wallace and Bernstein Shur. *See* ECF No. 46-4, attached to Hearing Request.

On July 9, 2019, at Bernstein Shur's request, Benjamin Donahue, Esq., an attorney for Dr. Snow, emailed Attorney Israel, stating, "To the extent that any attorney-client privilege still exists between Susan Snow and Bernstein Shur, Susan waives that privilege and will not object to

---

[2] References are to the individually numbered pages of the 175-page deposition transcript rather than to the ECF Page ID Number on which they appear.
[3] When Dr. Snow first was questioned on April 19, 2019, concerning her communications with Attorney Wallace, her then-attorney, Thomas Hallett, Esq., objected on the basis of attorney-client privilege and instructed her not to answer. *See* Snow Dep. at 44. However, after Ms. Moulton's attorney, Jonathan Brogan, Esq., showed Attorney Hallett an email exchange between Dr. Snow and Attorney Wallace that had already been produced, Attorney Hallett agreed that the privilege had been waived. *See id.* at 44-45.

3

the production of her Bernstein Shur file[.]" Email dated Tuesday, July 9, 2019, from Benjamin Donahue to Jonathan W. Brogan and Glenn Israel ("Donahue Email") (ECF No. 46-5), attached to Hearing Request.

Per representations of counsel during the August 21, 2019, discovery teleconference, the deposition of Attorney Wallace took place on August 9, 2019. On behalf of Bernstein Shur, Attorney Israel sought Dr. Snow's express waiver of the attorney-client privilege. Attorney Hallett contacted Dr. Snow, who stated that she waived the privilege. However, Dr. Snow then called Attorney Hallett back and informed him that she had changed her mind.

### III. Discussion

As the First Circuit has noted:

> The attorney-client privilege is well-established and its rationale straightforward. By safeguarding communications between client and lawyer, the privilege encourages full and free discussion, better enabling the client to conform his conduct to the dictates of the law and to present legitimate claims and defenses if litigation ensues. Still, the privilege is not limitless, and courts must take care to apply it only to the extent necessary to achieve its underlying goals. In other words, the attorney-client privilege must be narrowly construed because it comes with substantial costs and stands as an obstacle of sorts to the search for truth.

*In re Keeper of Records*, 348 F.3d at 22 (citations omitted).

A client can either expressly or impliedly waive the attorney-client privilege. *See id.* In this case, Dr. Snow did both with respect to the subject matter of Bernstein Shur's representation of her in the matter of the probate of her father's estate (including, but not limited to, Attorney Wallace's representation of her in that matter).

First, during her April 19, 2019, deposition, Dr. Snow impliedly waived the privilege when she disclosed the substance of communications between herself and Attorney Wallace. *See, e.g., id.* at 24 ("[C]ourts have found waiver by implication when a client . . . testifies concerning portions of an attorney client communication[.]"). As a matter of fairness, a disclosure of otherwise

4

privileged communications in the context of litigation effectuates an implied "subject matter waiver" in order to "disable[] litigants from using the attorney-client privilege as both a sword and a shield." *Id.* *See also, e.g., United States v. Mass. Inst. of Tech.*, 129 F.3d 681, 686 (1st Cir. 1997) ("With rare exceptions, courts have been unwilling to start down th[e] path" of carving out exceptions from waivers of attorney-client privilege, "and we join in this reluctance."); *United States v. Billmyer*, 57 F.3d 31, 37 (1st Cir. 1995) ("The general tendency of the law is to treat waivers as an all-or-nothing proposition."); *Official Comm. of Unsecured Creditors v. CalPERS Corp. Partners, LLC*, Docket No. 1:18-cv-68-NT, 2019 WL 3573652, at *1 (D. Me. Aug. 6, 2019) ("[T]he First Circuit has held that a party cannot effect a 'limited waiver' of the attorney-client privilege.") (citing *Mass. Inst. of Tech.*, 129 F.3d at 684-86).

Hence, on April 19, 2019, Dr. Snow impliedly waived any attorney-client privilege with respect to the entire subject matter of Bernstein Shur's representation of her in the matter of the probate of her father's estate, including, but not limited to, communications with Attorney Wallace.

Second, although Bernstein Shur understandably conservatively construed Dr. Snow's express waiver, as conveyed in Attorney Donahue's July 9, 2019, email, as pertaining solely to its disclosure of her client file, that waiver is most fairly read as extending to the entire subject matter of Bernstein Shur's representation of Dr. Snow in the probate court proceedings. *See* Donahue Email ("To the extent that any attorney-client privilege still exists between Susan Snow and Bernstein Shur, Susan waives that privilege . . . .").

Third, and finally, Dr. Snow again expressly waived the privilege when Attorney Hallett contacted her at Bernstein Shur's request during the August 9, 2019, deposition of Attorney Wallace. Her subsequent communication to Attorney Hallett that she had changed her mind did

5

not unring the bell. *See, e.g., In re Smith*, CASE NO. 14-21261 (JJT), 2017 WL 1190590, at *7 (Bankr. D. Conn. Mar. 29, 2017) ("The privilege once waived cannot be regained[.]") (citation and internal quotation marks omitted); *CP Kelco U.S. Inc. v. Pharmacia Corp.*, 213 F.R.D. 176, 179 (D. Del. 2003) ("Waiver is the deliberate relinquishment of a right which might otherwise be claimed. Except in limited circumstances not apposite here, a right that is waived is not available to be picked up again as if it were a handy tool. . . . It would be manifestly unfair to allow a party to use the privilege to shield information which it had deliberately chosen to use offensively[.]") (citations and footnote omitted).[4]

## IV. Conclusion

For the foregoing reasons, I find that Dr. Snow both implicitly and expressly waived her attorney-client privilege with regard to her communications with Attorney Wallace and Bernstein Shur relevant to the instant action.

## *NOTICE*

*In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.*

*Failure to file a timely objection shall constitute a waiver of the right to review by the district court and to any further appeal of this order.*

Dated this 11th day of September, 2019.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

---

[4] The *CP Kelco* court noted, for example, that there is authority that a limited disclosure of privileged information to law enforcement authorities does not constitute a waiver of the attorney-client privilege. *See CP Kelco*, 213 F.R.D. at 179 n.3. However, here, as in *CP Kelco*, "[n]othing in the circumstances before the Court involves the policy considerations allowing for such a selective waiver." *Id*.